IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Arlet, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1722 C.D. 2018 |
| | : | Argued: October 4, 2019 |
| Workers' Compensation Appeal | : | |
| Board (Commonwealth of | : | |
| Pennsylvania, Department of Labor | : | |
| and Industry, Bureau of Workers' | : | |
| Compensation), | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE WOJCIK                          FILED: July 29, 2020

Robert Arlet (Claimant), on behalf of Acadia Insurance Company (Insurer),[1] petitions for review of the Workers' Compensation Appeal Board's (Board) December 4, 2018 order insofar as it affirmed a Workers' Compensation Judge's (WCJ) determination on remand that Insurer is not entitled to subrogation under Section 319 of the Workers' Compensation Act (Act).[2]  Upon review, we affirm on other grounds.

---

[1] Claimant's counsel submitted into evidence a copy of a fee agreement between Claimant's counsel and Insurer.  WCJ's 5/16/17 Decision, Finding of Fact (F.F.) No. 22.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §671.

## I.    Background

The facts are not in dispute.  Claimant worked as a shipwright for Flagship Niagara League (Employer)[3] maintaining the U.S. Brig Niagara (Brig Niagara).  Insurer issued a Commercial Hull Policy to Employer.  Generally, the Commercial Hull Policy provided coverage for damages incurred by and damages caused by the Brig Niagara, as well as Protection and Indemnity coverage for "17 crewmembers."  Reproduced Record (R.R.) at 45a.  Employer obtained workers' compensation insurance from State Workers' Insurance Fund (SWIF).

On March 9, 2011, Claimant was injured during the course and scope of his employment when he fell on an icy sidewalk on Employer's premises.  Shortly thereafter, Insurer paid Claimant "maintenance and cure" benefits pursuant to the Protection and Indemnity Clauses of the Commercial Hull Policy.[4]

On February 8, 2013, Claimant filed a petition seeking workers' compensation benefits effective March 9, 2011, based on a weekly wage of $617.62. Employer filed a timely answer admitting Claimant's injury, but asserting that Claimant's remedy was governed by the Jones Act[5] and that Claimant had fully recovered from his injury as of May 12, 2011.

---

[3] Employer is a non-profit educational associate organization of the Pennsylvania Historical and Museum Corporation, responsible for the operation of the U.S. Brig Niagara and its homeport, the Erie Maritime Museum.  https://sailfnl.org (last visited July 28, 2020).

[4] "A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

[5] Section 33 of the Merchant Marine Act of 1920, 46 U.S.C. §688, is commonly known as the Jones Act.  It is part of the U.S.'s body of maritime law, and was enacted by Congress to provide heightened protection to workers who are exposed to the perils of the sea. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).  In relevant part, it provides a "seaman" the ability to sue his employer

Employer filed a joinder petition naming SWIF as an additional insurer, arguing that should Claimant succeed with the workers' compensation claim, SWIF would be liable. SWIF filed an answer denying coverage. Employer's policy with SWIF had lapsed at the time of Claimant's injury.

In turn, Claimant filed an Uninsured Employers Guaranty Fund (UEGF) claim petition, arguing that should he succeed, UEGF would be liable if Employer failed to pay. UEGF filed an answer denying the material allegations of the petition. The petitions were consolidated. The WCJ bifurcated the proceedings to first determine if Claimant was a "seaman," making the Jones Act his exclusive remedy.

Before the WCJ, Claimant argued that the Jones Act maintenance and cure benefits were paid to him incorrectly because he was not a "seaman" based on the nature of his employment. In rebuttal, Employer argued that Claimant was injured while working on repairs to the Brig Niagara, and, while his job did not involve sailing, Claimant was employed as a shipwright and was considered a member of the crew. Therefore, his injuries would be covered under the Jones Act.

Claimant testified that the work of a shipwright is similar to that of a carpenter. Claimant maintained the wood of the ship, built masts, caulked decks, repaired the hull, and performed dry dock procedures. Claimant testified that he performed most of his work in the winter when the Brig Niagara was docked and

_for negligence to recover for injuries sustained during the course of his employment. *Id.* Filing a suit in negligence is a seaman's only remedy; he has no remedy under workers' compensation laws. *Id.* at 355-56. Once an individual is found to be covered by federal maritime law, the state workers' compensation law is preempted. *Hill v. Workmen's Compensation Appeal Board (Spirit of Philadelphia)*, 703 A.2d 74, 78-80 (Pa. Cmwlth. 1997). Additionally, where applicable, the Act is "the exclusive remedy for an injured employee seeking redress for a work related injury from his employer, [Section 303 of the Act,] 77 P.S. §481(a)." *Vandervort v. Workers' Compensation Appeal Board (City of Philadelphia)*, 899 A.2d 414, 418 (Pa. Cmwlth. 2006).

that he had not sailed on the ship since 2000. Claimant's direct supervisor was the captain of the Brig Niagara, and Claimant was assigned to work only on that vessel.

After considering the testimony and other evidence presented, the WCJ determined that "Claimant was a seaman for purposes of the Jones Act," and therefore, he was not entitled to workers' compensation under the Act. R.R. at 174a. As a result, the WCJ dismissed the petitions.

Claimant appealed to the Board, challenging the determination that Claimant was a "seaman" under the Jones Act. The Board agreed and reversed the WCJ's decision that Claimant was a "seaman" under the Jones Act, stating:

> [T]he evidence reflects that Claimant currently works on the [Brig Niagara] only over the winter when it is in port or dry-docked, and we see no indication that he is ever exposed to the perils of the sea, we must conclude that he is not a seaman for purposes of the Jones Act.
>
> * * *
>
> Therefore, we must conclude as a matter of law that Claimant was a land-based employee and not a seaman pursuant to the Jones Act, and thus we cannot agree that an award of benefits pursuant to the Jones Act would be appropriate. Consequently, pursuant to Section 101 of the [Act, 77 P.S. §1], Claimant is entitled to seek an award of workers' compensation benefits.

R.R. at 186a-87a (internal citations omitted). The Board reversed the WCJ's determination that Claimant was a "seaman" under the Jones Act and remanded the case to the WCJ to proceed on the merits.

On remand before the WCJ, Employer presented evidence regarding its Commercial Hull Policy with Insurer, which was in effect from May 1, 2010, to May 1, 2011. The Commercial Hull Policy provided coverage for the Brig Niagara, protection and indemnity liability coverage for the crewmembers, and a waiver of

4

the right to subrogate "against affiliate, subsidiary or interrelated companies" of Employer. R.R. at 45a, 48a, 53a.

Employer also presented evidence regarding its workers' compensation insurance policy. Employer had maintained workers' compensation insurance through SWIF from March 5, 2010, to March 5, 2011. Claimant's injury occurred on March 8, 2011, when Employer had no workers' compensation insurance coverage.

The evidence reflected that after Claimant reported his injury to Employer, Employer reported the claim to Insurer for payment pursuant to the Commercial Hull Policy. Insurer paid Claimant maintenance benefits of $50 per day for 92 days, as well as medical expenses, for a total of $46,833.36.

After paying Claimant, Insurer recognized that its ability to subrogate the claim may be foreclosed. Insurer's employee, Lisa Marie Briggs (Ms. Briggs), wrote in the claim file on July 27, 2012:

> After thinking about the recovery on this file, I was not so sure that we could subrogate. Although the [C]laimant slipped and fell . . . that property is still owned by the Insured. Therefore, technically **we would be subrogating against our own insured.**
>
> After speaking with the Agent, whom [sic] use [sic] to write the [general liability] for this insured, he stated that [Employer] has their [sic] own employees take care of winter maintenance. Therefore [Claimant] would be limited to [workers' compensation], but since [Claimant] is a crewmember of the vessel, he would have to make a [maintenance and cure] claim. [Claimant] would only be owed [maintenance and cure] since the vessel was in no way responsible for [Claimant's] slip and fall.

R.R. at 168a (emphasis added).

5

Based on the evidence presented on remand, the WCJ found that Claimant was entitled to benefits under the Act. R.R. at 41a-42a. The WCJ granted the claim petition and awarded Claimant total disability benefits at a weekly rate of $411.75 from March 8, 2011, to August 19, 2011. *Id.* Additionally, the WCJ concluded:

> 6. [Employer], being uninsured at the time of this injury, is responsible for payment of the difference between Workers' Compensation benefits and Maintenance & Cure benefits. [] Employer provided insurance coverage for Claimant through the [Commercial Hull Policy]. [] Employer took steps to insure that []Claimant, as an employee, only worked in jobs that involved servicing the Brig Niagara thus providing coverage under the [Commercial Hull Policy]. [Insurer] correctly paid the benefits pursuant to [the Commercial Hull Policy]. [] Claimant is not entitled to double coverage, however, he is entitled to be made whole. [Employer], in not providing Workers' Compensation benefits, is liable for the additional benefits afforded by the [] Act. In this case, this amounts to $5046.71 in wage loss benefits . . . and no medical benefits since these were paid in full.

> * * *

> 8. There is no subrogation owed to [Insurer], since according to [its] own investigation, [it] correctly paid under [the Commercial Hull Policy]. Neither [] Claimant nor the medical providers are entitled to double recovery.

> 9. If [Employer] refuses or fails to make payment, the UEGF is required to pay the benefits owed, with leave to seek reimbursement from [Employer].

*Id.* Both Claimant and UEGF appealed to the Board.

On appeal, UEGF argued that Claimant was a "seaman" and, therefore, his sole remedy was under the Jones Act. Citing *Shuster v. Workers' Compensation*

6

*Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282 (Pa. Cmwlth. 2000), the Board explained that a "party is required to appeal from the WCJ's decision on remand, even if favorable on the remanded issue, and request that the Board make its previous order final." R.R. at 21a. Having previously determined that Claimant was not a "seaman" for purposes of the Jones Act, the Board declined to revisit that issue.

Claimant argued that the WCJ erred in concluding that Insurer correctly paid Jones Act benefits and was not entitled to subrogation. The Board affirmed the WCJ's determination that Claimant was covered by the Commercial Hull Policy, based on its review of the Commercial Hull Policy's provisions and principles of contract interpretation. The Board found that Insurer could have used the terminology of the Jones Act if it had wished to do so, and construed the term "member of the crew" in favor of the insured.[6]

---

[6] The Board stated:

> When the policy language is unambiguous, the court gives effect to that language. When a provision is ambiguous, the policy is to be construed in favor of the insured. Language of a contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. The courts do not assume that contract language was chosen carelessly.

> Subrogation is the right of one who [sic] has paid an obligation which should have been paid by another to be indemnified by the other.

> * * *

> [Claimant] argues that because at the time of injury [Claimant] was not a seaman pursuant to the Jones Act, he could not be a member of the crew under the terms of the policy. Clearly, the insurer could have incorporated the terminology of the Jones Act if

7

Having previously determined that Claimant was not a seaman for purposes of the Jones Act, after remand the Board held that "Claimant was a member of the crew for purposes of the [Commercial Hull Policy]." R.R. at 25a. Thus, the Board concluded that Insurer was not entitled to subrogation under Section 319 of the Act. The Board affirmed the WCJ's decision, and Claimant petitioned this Court for review on December 31, 2018.[7] Employer intervened.

---

it had so wished. The policy language does not incorporate the language of the Jones Act. We do not assume that the contract language was chosen carelessly.

Because the term "member of the crew" in the policy is reasonably susceptible to different constructions, it is ambiguous and is to be construed in favor of the insured.

\* \* \*

In the present matter, the [Commercial Hull Policy] covered hospital, medical or other expenses necessarily and reasonably incurred in respect to injury to a member of the crew. Any payments made by [Insurer] to, or on behalf of Claimant were [Insurer's] responsibility under the [Commercial Hull Policy]. [Insurer] did not pay any obligation which should have been paid by another. Accordingly, [Insurer] is not entitled to subrogation.

R.R. at 21a-22a; 24a-25a (citations omitted).

[7] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1317 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the conclusions reached. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

## II.     Issues

On appeal, Claimant first argues that the "law of the case" doctrine compels this Court to vacate the Board's December 4, 2018 decision because the Board had previously determined Claimant was not a "seaman" pursuant to the Jones Act. Second, Claimant argues that the Board's decision is not supported by substantial evidence. Employer counters that, in the event this Court reverses the Board, Insurer is not entitled to subrogation because it cannot subrogate against its own insured.[8]

## III.     Discussion

### Law of the Case Doctrine

As a preliminary issue, we address the applicability of the "law of the case" doctrine. Claimant argues that the "law of the case" doctrine applies and requires the Board to find that Claimant was not a "crewmember" under the Commercial Hull Policy because the Board had previously determined that Claimant was not a "seaman." Claimant asserts the terms "crewmember" and "seaman" are interchangeable and that the Board's December 4, 2018 decision disregards its prior determination that Claimant was not a "seaman." Employer counters that the law of the case doctrine is inapplicable in cases where the second order does not reverse the first order and that there indeed was no reversal of the determination that Claimant was not a "seaman." Rather, the Board determined that, under the Commercial Hull Policy's "member of the crew" language, Claimant was covered.

---

[8] Employer further argues that it is entitled to a credit for the workers' compensation benefits it paid to Claimant under the second WCJ order. However, Employer has failed to identify where it has raised this argument before the WCJ or the Board. Therefore, the issue is not properly before this Court.

9

The law of the case doctrine is a body of rules regarding the concept that a court involved in the later phases of a litigated matter should not reopen questions previously decided by another judge of the same or a higher court in an earlier phase of the matter. *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Specifically, the doctrine includes the following relevant rules:

> (1) Upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; [or] (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]

*Id.* Claimant cites no persuasive authority supporting application of the law of the case doctrine to decisions rendered entirely within the workers' compensation system, and we decline Claimant's invitation to do so here.[9]

### *Substantial Evidence*

Next, Claimant argues that the Board's decision is not supported by substantial evidence. Claimant explains that where the evidence demonstrates that he is not a "seaman" under the Jones Act, the same evidence cannot support a finding that he is a "crewmember" under the Commercial Hull Policy because the two terms are interchangeable.

---

[9] Claimant cites two cases in support of his argument that the law of the case doctrine is applicable. Both are distinguishable. *Madden v. Workers' Compensation Appeal Board (Gutter Guard)* (Pa. Cmwlth., No 2218 C.D. 2012, filed May 20, 2013) (*Madden II*), involved a case that was appealed to this Court, remanded to the WCJ, and then again appealed to this Court. In the second appeal, this Court held that the law of the case doctrine prevented the reconsideration of the Court's prior decision. *Id.* However, in this case, there has not yet been an appeal and decision outside of the workers' compensation system. Claimant also cites *Krouse v. Workers' Compensation Appeal Board (Barrier Enterprises, Inc.)*, 837 A.2d 671 (Pa. Cmwlth. 2003), which contemplates the impact of *res judicata* and collateral estoppel, not the law of the case doctrine.

Employer argues that the determination that Claimant is not a "seaman" for purposes of the Jones Act does not preclude a finding that he is a "crewmember" and therefore covered under the Commercial Hull Policy. Employer contends that if Insurer wanted to limit the Commercial Hull Policy's coverage to "seaman" or if it intended for the terms "member of the crew" and "seaman" to be interchangeable, it could have defined them as such.

Exactly who qualifies as a "seaman" under the Jones Act has been refined through more than 75 years of case law. "[T]he question of who is a 'member of the crew,' and therefore who is a 'seaman' is a mixed question of law and fact." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995).

In *Chandris*, the U.S. Supreme Court reduced the class of individuals who are "seamen" to the following test: (1) the employee's duties must contribute to the function of the vessel or the accomplishment of its mission; and (2) the employee must have a connection to a vessel or vessels in navigation that is substantial in both its duration and its nature. 515 U.S. at 355-56. The second requirement narrows the field of employees who are "seamen" by distinguishing land-based workers who only have a "transitory or sporadic connection to the vessel in navigation." *Id.*

Under relevant case law, the terms "crewmember" and "member or master of the crew" have been held to be synonymous with "seaman." In *Chandris*, the Court observed that the Longshore and Harbor Workers' Compensation Act (LHWCA),[10] which provides the exclusive remedy for injuries sustained by a range of land-based maritime workers, explicitly excludes from its coverage a "member of a crew of any vessel." *Chandris*, 515 U.S. at 355 (citing 33 U.S.C. §902(3)(G)).

---

[10] 33 U.S.C. §§901-950. Neither party has raised the argument that Claimant was covered under the LHWCA.

As the [U.S. Supreme] Court has stated on several occasions, the Jones Act and the LHWCA are mutually exclusive compensation regimes: "master or member of the crew" is a refinement of the term "seaman" in the Jones Act; it excludes from LHWCA coverage those properly covered under the Jones Act. Indeed, it is odd but true that the key requirement for Jones Act coverage now appears in another statute.

*Chandris*, 515 U.S. at 355-56 (internal quotations and citations omitted).

In *Foulk v. Donjon Marine Company, Inc.*, 144 F.3d 252 (3d Cir. 1998), the Third Circuit Court of Appeals held that the term "master or member of the crew" is a refinement of the term "seaman" in the Jones Act. *Id.* at 258. Further, the court elaborated that an individual's status as a seaman, based on the test enunciated in *Chandris*, requires the court to analyze the totality of the circumstances. *Id.* at 260.

In *Hill v. Workmen's Compensation Appeal Board (Spirit of Philadelphia)*, 703 A.2d 74 (Pa. Cmwlth. 1997), the claimant appealed an order of the Board affirming the dismissal of his claim petition for lack of jurisdiction. The claimant was a deckhand on a ship and his duties included cleaning the deck and general household work aboard the ship. *Id.* at 75-76. The claimant was injured on shore while taking out the trash. *Id.* at 76. The Court reiterated that to determine whether the claimant's injury was compensable under the Act, it must first determine whether the claimant was a seaman under the Jones Act. Based on the totality of the facts, the Court concluded that the claimant was a seaman, injured in the course of his employment, and his exclusive remedy was under the Jones Act. *Id.* at 80.

Because, as a matter of law, the term "crewmember" is interchangeable with "seaman" for purposes of the Jones Act, *Foulk*, 144 F.3d at 259, *Hill*, 703 A.2d at 78, and the remedies under both statutes are exclusive, the Board erred in concluding that Claimant was entitled to Jones Act maintenance and cure benefits and workers' compensation benefits for the same injury.

12

*Subrogation*

Nevertheless, we affirm the Board's December 4, 2018 order because Insurer is unable to subrogate its own insured. It is well-settled that an insurer cannot subrogate against its own insured. *Keystone Paper Converters, Inc. v. Neemar, Inc.*, 562 F. Supp. 1046, 1048 (E.D. Pa. 1983) ("there exists a large body of law to the effect that an insurer may not subrogate against its own insured."); *Employers of Wausau v. Purex Corp.*, 476 F. Supp. 140, 142 (E.D. Pa. 1979). "By definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty." *Remy v. Michael D's Carpet Outlets*, 571 A.2d 446, 447 (Pa. Super. 1990). For an insurer to prevail against its own insured in a subrogation action contravenes public policy. *Employers of Wausau*, 476 F. Supp. at 143.

There is no dispute that Employer is the named insured under the Commercial Hull Policy, pursuant to which Insurer paid "maintenance and cure" benefits to Claimant. R.R. at 195a-96a. Insurer is now attempting to recover from its own insured the sums paid to Claimant under the Commercial Hull Policy. Insurer, as Ms. Briggs noted in the claim file, is unable to subrogate against its own insured. *See Employers of Wausau*, 476 F. Supp. at 142; R.R. at 168a. To permit subrogation in this case would be a direct violation of the well-settled rule that an insurer is unable to subrogate against its own insured. *See*; *Keystone Paper Converters*, 562 F. Supp. at 1048; *Employers of Wausau*, 476 F. Supp. at 142.

13

## IV. Conclusion

Although the Board erred in holding that Claimant was entitled to benefits under two statutes providing exclusive remedies, we conclude that Insurer is not entitled to subrogation against Employer. Accordingly, we affirm the Board's order.[11]

_____
MICHAEL H. WOJCIK, Judge

---

[11] We "may affirm on other grounds where grounds for affirmance exist." *Kutnyak v. Department of Corrections*, 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000); *accord Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 786 n.8 (Pa. Cmwlth. 2015).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Arlet,                                    :
                                                 :
                              Petitioner         :
                                                 :
              v.                                 :  No. 1722 C.D. 2018
                                                 :
Workers' Compensation Appeal                     :
Board (Commonwealth of                           :
Pennsylvania, Department of Labor                :
and Industry, Bureau of Workers'                 :
Compensation),                                   :
                                                 :
                              Respondent          :


O R D E R


AND NOW, this 29<u>th</u> day of <u>July</u>, 2020, the December 4, 2018 order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge